Good morning, your honors. I've reserved three minutes for rebuttal. May it please the court, Nick Golden on behalf of the United States. The compassionate release statute is a narrow exception to the general rule of finality in sentencing. In this case, the district court found extraordinary and compelling reasons to reduce Montez Hall's final sentence of imprisonment by eight years, and the district court found two reasons that it believed were extraordinary and First, the fact that Mr. Hall was an 18-year-old adult at the time of the offenses in this case, and second, Mr. Hall's rehabilitation while in prison. The district court misinterpreted the extraordinary and compelling reasons requirement and it therefore abused its discretion, and it did so for two reasons. First, the district court misinterpreted the sentencing commission's policy section 1B1.13B5 to include consideration of a defendant's youth at the time of the offense. Do you think that if Hunter is good law, do you win the case? Yes, your honor. We win the case because Hunter is good law and because Bricker is good law. So we win the case. Oh, because the commission couldn't... So Hunter says age was available at the time, you can't consider it. The commission says just because something's not available doesn't mean you can't consider it. We say in Bricker the commission can't do that if it's an ambiguous interpretation. So in that case, Hunter would still be good and therefore you're saying you would win, right? That's correct, your honor. A few things I might say about that. So Hunter interpreted the contours of extraordinary and compelling reasons in the statute, and so that's kind of the... There's kind of two sides of this case. One is just interpreting the policy statement, and another is, okay, if the district court and Mr. Hall are right about what the policy statement permits the district court to consider, then we have to move over and say, did that exceed the commission's authority? And that's really where Hunter comes into play, is that Hunter says, under the statute, extraordinary and compelling reasons do not include a defendant's youth at the time of the offense. And then we know from Bricker that even if the sentencing commission had wanted to permit district courts to consider a defendant's age at the time of the offense under the policy statement, they could not do that. That would exceed the scope of their authority. I did want to... I'm sorry, do we have to wait for Rutherford to come out from the Supreme Court? I don't think you do, your honor. And that's kind of what I was saying about the two parts of the case. The most straightforward way to resolve this would be just to interpret the policy statement the same way that the Ninth Circuit did in Bryant. We cited the Ninth Circuit's recent published case in Bryant in our reply brief extensively. And so what the Ninth Circuit did in Bryant is it just read B-5 of the policy statement and said if you read B-5, B-5 does not include consideration of a defendant's youth at the time of the offense. And so if this court does that, I don't think there's any reasonable likelihood that the Supreme Court in Rutherford or in Fernandez is going to touch on the interpretation of B-5. Even if the court gets into the Bricker part of it, there's a possibility the Supreme Court, particularly in Rutherford, could say relevant to that. But I don't think it's not a certainty at all. Judge Nalbandian, your question before, I think you were referring to subsection E of the policy statement, which is the part about just because a fact was foreseeable doesn't mean it can't be considered. But here we have a fact that was not just foreseeable, it was a fact that was known and clearly existed at sentencing. Well, I mean it was known, it was considered, wasn't it? Yes, it was. I mean she considered it, so the district court considers the age, gives a sentence, and then considers it again, I take it. But I'm curious whether a judge could do something like the following. Could a judge say, hey, you're young, I'm going to take that into consideration, I'm going to knock a few months off of your sentence. I don't know how you're going to do though, but if in five years you come back and it turns out that you've also rehabbed yourself, I'm going to take into consideration your youth and the rehab and I'll knock a few more years off. Under the old, I don't know how that would, it wouldn't make a compassionate release motion on their own. I mean why isn't that, is that essentially what's going on? In other words, I don't know whether you're going to be a good prisoner or not, but if it turns out that you're good and that you rehab yourself, the youth combined with the rehab would get you more time off. Judge Nelbanian, I think what you're describing is a system of judicial parole, but judicial parole only for some defendants but not for others. You're essentially describing a situation... The ones that meet the extraordinary and compelling circumstance, right? Well, I think as a kind of a broader point, if there's one thing we know Congress was trying to do when it passed the Sentencing Reform Act of 1984, and Your Honor's opinion in McCall talks about this extensively, Congress was trying to get rid of parole. And so I don't think it can be the case that we now have a system effectively of parole, but only for young defendants, which I think is exactly what Your Honor's describing. But also Hunter answers this question. Hunter takes age at the time of the offense off the table. That's a binding interpretation of the statute issued by this court. And so even, I mean, that takes it out of play. But I take it your argument is... Maybe I'm mishearing your argument. Part two of your argument is we don't need Hunter. You look at the policy statement on its face. Age is mentioned, but only with being old and being sick. Youth is not mentioned. There's a catch-all. I take it your argument would be it doesn't fit. The gravity of youth doesn't fit within there. So if I take the youth, and it was actually considered by the district court here. That's exactly right, Your Honor. I would say our primary argument is just read the policy statement. And so subsection B-5, it is a catch-all. The Ninth Circuit in Bryant made clear it's a narrow catch-all. And if you look at the text of B-5, what it says is we need a reason that is similar in gravity to the circumstances enumerated in subsections B-1 through 4. B-1 through 4 cover circumstances where the defendant gets old in prison, gets sick, is the victim of abuse in prison, or has a family member outside of prison who's unable to care for him or herself and needs the defendant to care for them. What's an example of something that would be similar in gravity to those four points? Your Honor, I think that the best example I could give would be maybe something like conditions of confinement in prison where you have facts that are changing after sentencing. It turns out that maybe the conditions in the inmate's particular prison are very severe or inhumane or something like that, where it's similar in gravity in that the defendant is being exposed to a risk to his health or safety based on facts that are arising after sentencing. I would say that's similar in gravity to the abuse condition that you have in B-4. What would be similar in gravity to that sort of the age component? I know that's talking about old age, but what would be similar in gravity to that, if anything? Under B-2, that's the age of the defendant provision. Even there, the Sentencing Commission has not said that old age standing alone can ever be extraordinary and compelling. A prisoner's old age needs to be combined with other factors. Specifically, the defendant also has to be experiencing deteriorating health because of the aging process and has to have served a certain minimum portion of the sentence. It's not just old age. It's old age plus effects on health. I don't think there's anything similar in gravity to age standing alone because the Sentencing Commission never meant for age standing alone to form a basis for compassionate treatment. I was just going to say that several of the factors do go to the prisoner's individual conditions personally or around him. Something that affected those conditions that might not have been covered. I suppose one of the reasons to say there's nothing similar in gravity is because they're so broad already. If for some reason the government could say, you don't fit exactly within this, but you're debilitated in some other way, that would be similar in gravity, wouldn't it? Exactly. Yes, Your Honor. That's right. I think that in B-1 through 4, the Sentencing Commission has described a lot of the universe of things that are going to be extraordinary and compelling, but they did leave room in B-5 for additional things that are similar in gravity to those. I don't think it's surprising that it is a little bit difficult to come up with other examples that will fit in the catch-all. I grant you that. I'm curious, what's the difference between similar in nature and consequence as opposed to being similar in gravity? The Commission rejects the one but says, I don't know, they seem very similar to me and the way you're describing it too. For example, if I said the following, 1 through 4 seem to involve either direct possible harm to the prisoner, like I'm going to die if I stay in prison, or harm to another individual, like I'm a caretaker or somebody's going to suffer if I'm still here. Age, your youth has nothing to do with any of that. Am I describing something that age is not the same in nature and consequence, or is age not the same in terms of gravity? I think it's both. I'm focusing on the text that's in B-5 and that is similar in gravity, and I'm focusing on what makes B-1 through 4 grave or serious. What makes those grave or serious is that a defendant's health or safety is being put at risk by facts developing after sentencing. A defendant's youth at the time of the offense here, that hasn't changed since 2008 in this case. It is not similar in gravity. I grant you it is a little bit difficult to figure out what the delta is there, but I think the conditions of confinement hypothetical that I gave to Judge Mathis, another possible hypothetical, I see I'm out of time, can I just finish this answer? Another possible hypothetical would be, suppose you had a defendant who was a cooperator and his identity as a cooperator was discovered in prison and there was a credible allegation that BOP either couldn't or wouldn't adequately protect him. That might be something that's similar in gravity because it's looking at potential physical harm to the defendant based on changed conditions in prison, but I don't think it would be similar in nature to anything in B-1 through 4. Well, it doesn't. It could be similar in nature. That wouldn't rule it out. They just didn't rule it in. They didn't rule it as something that you had to have. Correct. I guess is what I'm saying. So if it was similar in nature, that would be a better case for the, that would be a better B-5 case, I think. That's right, Your Honor. The Sentencing Commission went with similar in gravity to try to draw a little bit, a little bit of a broader net. Okay. All right. Thank you. You'll have your full time. Thank you. Ms. Green? Yeah. May it please the court. I'm Molly Rose Green and I'm here to represent the appellee Montez Hall. The Sentencing Commission intended for district courts to be able to consider an individual's youth alongside other factors as the district court did here before granting Mr. Hall a modest sentence reduction. Now that the commission has promulgated an updated policy statement applying to defendant filed motions, this court's prior decision in Hunter no longer controls the outcome of this case. And we know that by applying the framework laid out by this court in Bricker. Bricker established our framework for analyzing whether a pre-amendment interpretation disallows the commission from doing what it did in the new policy statement. So the question is, did the commission have the authority in light of the prior decisions? In the case of non-retroactive changes to the law, as in McCall, no, the commission did not. And that's because as this court held in McCall and in Bricker, contrary federal statutes, namely 2255, the First Step Act sections on non-retroactivity, and 1 USC 109, the statute on non-retroactivity, barred it from doing what it did. But when we apply the Bricker framework here, we're missing the most important aspect, which is, namely, there's no congressional indicator that extraordinary doesn't encompass youth. There's no contrary statute. I'm not following. I thought, I mean, Hunter pretty, Hunter, I'm sorry, Bricker says we defined extraordinary and compelling in McCall to not include this. The commission now says it does, but we're not going to go with that. We're going to go with our, the guardrail is the plain language of the statute. Hunter said under the statute stage that was, which was known at the time, isn't extraordinary and compelling. Why is that? Why are we not in the same exact place that we were in? Sure. So the difference, first of all, is that we now have the policy statement from the commission, which came out after Hunter. But didn't we have that in Bricker? Yes, exactly. We had a policy statement that came out after McCall came out, right? So we're now applying the framework laid out in Bricker to Hunter to see if, like McCall, Hunter remains good law. And the distinguishing factor between Hunter and between McCall is that McCall's decision was based on the commission violating what we know from Labonte, which was cited in Bricker, which is that the commission can't interpret a statute in a way that goes against other statutes. So in McCall, the court looked at, again, 2255, first step back, non-retroactivity, the retroactivity statute. It said the commission did something it couldn't do, basically. It did something that was in violation of other federal statutes. And again, that was not the case in Hunter. There were no contradictory federal statutes. Well, I mean, in McCall, the commission hadn't said what they said yet, had they? No. I mean, it's just, I guess what I'm saying is, it seems like the broad picture view, I suppose, is the court is interpreting what extraordinary and compelling means. There's a plain language interpretation. It's X. The commission can't vary from that, even with an express delegation. That's what Bricker says. At that broad level, it seems to me that Hunter is on, I mean, it's not the same exact analysis as McCall went into in terms of how you get to that point, but it seems like it's kind of the end point is the same. Maybe I'm misreading that. There's certainly some very broad language in Bricker, but Bricker cites Labonte for the proposition that the commission cannot interpret a statute to contradict or negate another statute. And that is kind of the governing framework from the Supreme Court that the Bricker was using to say, hey, does McCall continue to bind us or not? And so what happened was the commission violated that in promulgating B-6, which violated several other statutes from Congress. And so in Bricker, because the commission did that, McCall continued to bind and continues to bind the court. And that was not the case in Hunter. We have no indication. Do you agree that in Hunter, that we were interpreting the statute as extraordinary and compelling from the compassionate release statute? Yes. Like just now, Ben, I'm confused about how Bricker doesn't say that the commission policy statements that come afterward can't essentially overturn what we said in Hunter. I think the policies, correct me if I'm misunderstanding your question. I believe the policy statement does overturn what this court said in Hunter and not what the court said in McCall. Explain that. I'm still not following that. It seems like a better argument would be to somehow distinguish Bricker, and maybe you can't distinguish Bricker, but I don't see how the Bricker analysis would apply differently to McCall than it would to Hunter. Well, I am trying to distinguish Bricker, and I'll try to do a better job of it. I think that Bricker, inciting Labonte, said, how do we know if this court has to follow pre-policy statement guidance? And the way to know from Labonte is, did the commission, in promulgating its policy statement, did the commission violate another federal statute? In other words, is there congressional guidance telling us that the commission can't do what it did? And here we have in McCall, and then as affirmed in Bricker and explained in Bricker, it said, Congress told us that if you have a change in the law, you litigate that in a 2255 if you can. Otherwise, non-retroactivity applies. That was directly in contradiction with what the violated other statutes, other direct information from Congress. And that's not what we have in Hunter. Hunter looked at the Compassionate Relief Statute, again, in the vacuum, without guidance from the commission. It looked to see, what do we think it means? We don't have guidance. What do we think it means? What does this language mean? McCall did something different. It looked at the language, certainly, but it also looked at these other statutes and said, hey, Congress has told us how you litigate this particular kind of claim. And you do it in a 2255 or you don't do it at all. Congress has spoken on that. Here, what we have from Congress is a delegation to the commission to define extraordinary and compelling circumstances and to make sure that rehabilitation alone is not a reason to grant someone a sentence reduction. That's the guidance from Congress when it comes to youth. There's nothing contrary. So that's why I believe that the Bricker framework does apply here, but that it applies differently to Hunter than it did to McCall. Okay. What about the argument that putting that aside, assuming you're right, even on its own, looking at the policy statement, what the district court did here was problematic? Sure. I think that Congress and the commission makes it very clear when they want to exclude a factor from consideration. We know that from the way that Congress and the commission treated rehabilitation. And here we have even more information than that from the commission. We know that the commission explicitly mentioned youthful offenders in its reason for amendment. And a close look about language shows that the commission envisioned or suggested as an example, the combination of youth and rehabilitation as potentially generating extraordinary and compelling reasons, and then giving a court permission to look at changes in the law that would otherwise not be something that the court could consider. That's from the reason for the amendment. So the commission would not have listed youth as an example in that text if it was a prohibited factor. And we can gather that both by what they didn't do, which was explicitly preclude youth, and what they did do, which was also explicitly mention youth. So I think that it's quite clear that the commission envisioned youth as a potential factor contributing to extraordinary and compelling reasons. Why didn't they put it in there then? Do you agree that it would be strange just as an exercise of defining what extraordinary and compelling is that youth, just standing alone that youth would be extraordinary and compelling? I mean, it's not like it's unusual to have youthful offenders, unfortunately. I'm struggling to see how it would be extraordinary and compelling. Do you mean youth alone? Yeah. Yeah. I mean, well, I will just toss out there that in 2012, the year Mr. Hall was sentenced, 0.03 of federal offenders were under 21 years old. That's from the sentencing commission. And that's not to say that youth on its own is extraordinary and compelling, but just some of the studies about youth are very broad. Is that percentage the time of sentencing or time of commission of the crime? At the time of commission of the crime. But as a drafting exercise, wouldn't it have been more plausible to put age in in a comparable paragraph to the rehabilitation? I mean, I think that if the commission had wanted youth standing alone to be, you know, to be... No, I analogize that to the rehabilitation paragraph, D, because there it flatly says rehabilitation alone isn't enough, but you can combine with other things. So if you wanted age to be possibly brought in, wouldn't you have wanted to have a comparable paragraph about age as opposed to... The only thing about age in this entire policy statement is about being very, very old, not very, very young. I think it would have been absolutely impossible for the commission to generate enough subsections to include every possible thing that could be considered extraordinary and compelling. And I think that's why they included B-5. And I think that's also likely why they indicated that something arising under B-5 would have to be similar in gravity instead of in nature. But they were willing to put in a separate thing about rehabilitation. They didn't, in one sense, under your argument, they didn't need to have D because rehabilitation could be considered just as you now say age could be considered. If D were not there, couldn't they consider... Couldn't a Judge Trauger consider rehabilitation just as she considers age? Um, you mean if it didn't say rehabilitation can't be alone? If D just wasn't there. Certainly. I think B-5 really leaves it in our history of sentencing and resentencing. It leaves it to the district court's discretion to determine what it believes could constitute extraordinary and compelling reasons. And that delegation from Congress was quite broad. And I believe youth wasn't listed in particular, again, because I think it would be impossible to list every possible factor that a district judge in their kind of experience and expertise might consider to be extraordinary and compelling. And I think that it's very difficult to believe that youth is completely off the table when it was listed as an example. What do we do... One of the things that is interesting about this case is the judge considered, actually did consider youth at the time of the original sentencing and then went back and considered it again. And I'm curious, is there any limitation on doing something like that? I mean, could the offender come back a year later and say, I'm young and something else. I don't know. I've completed some classes and I'm rehabilitating myself. I mean, there's nothing to stop it, I guess, right? Sure. And I have a few replies to that. I think, first of all, an offender can come back anytime and they can come back again and again under the statute, right? They certainly would be permitted to seek a sentence reduction after a year. It wouldn't be granted. This wasn't that kind of situation. Would it make sense for us to be skeptical of using the same exact thing that we used before? I see what you mean. Which one is it? Is it six? Six is long sentence. It says the fact that it reasonably could have been known or anticipated doesn't preclude. Well, this was actually considered. I mean, it's not one of these where, oh, it could have been known and it wasn't, so you can't consider it now. It could have been known, was known, was actually considered. I don't understand how you can consider it again. So two things on that. The first is that the way youth was considered changes. So, of course, Mr. Hall's age at the time of the crime being committed, 18, stays static. At his sentencing, the court expressed that he was young, that she was hopeful for him. Youth was being seen as a possible prediction of future potential. And then 12 years later in the sentence reduction context, youth was seen in a different way. It was seen as evidence of his brain development. So not his rehabilitation, but when I see my time is up, is it okay if I try to quickly? Okay. So as evidence that his brain indeed was elastic, had developed. So it wasn't looked at in the exact same way. But I also want to quickly note that the purpose of the Sentencing Commission itself in 28 U.S.C. 991 is to assure the meeting of the purposes of sentencing in 3553A. So everything that the Sentencing Commission does in promulgating these statements is to meet the purposes of sentencing in 3553A. So I believe there's necessarily overlap between what constitutes the extraordinary and compelling and a factor that may be considered in 3553A. Okay. Okay. Thank you. Thank you. Thank you for your argument. Rebuttal. Thank you, Your Honor. I'd like to start with the reason for amendments that my friend was discussing because I think that is kind of Mr. Hall's main counter argument going the other way. But that's not persuasive in this context for a few reasons. The first is, and when I'm talking about the reason for amendment, I'm talking about the example specifically. They use youth as an example, right? Yes, Your Honor. The Sentencing Commission gave that to explain the scope of subsection C. Subsection C is addressed to a different question. It's addressed to how a district court should consider a change in law after it's already found extraordinary and compelling reasons. So that example was not provided as an example to illustrate the scope. But why does that matter? I mean, it's, hey, look, they're just offhandedly throwing out age. I mean, hey, we all agree that youth could be considered in some constellation, right? Your Honor, the example is actually agnostic on the answer to that question. It says, if the district court were to find these were extraordinary and compelling, then they could go on to consider the change in law. I do think it's... I mean, it would be odd for them to put in an example that is basically legally out. Well, I... I mean, why put it... I mean, that would be like saying, you know, consider the race of the person and this and this. And everybody would say, what are you talking about? Of course, you can't consider race. But why would you use an example that added in there? My point is just that they were actually thinking about a different question when they put that in there. So it wasn't like a considered judgment. The other thing I'd say is, as I think one of your honors pointed out before, I mean, whatever they meant by that example, it did not make it into the policy statement. Bricker cannot be distinguished. That's what you spent the most time talking about with my friends. Mr. Hall's position is that Bricker is different because in the context of non-retractive legal developments, there are other statutes that also are a problem in addition to the Compassionate Release Statute and its extraordinary and compelling limitation. But extraordinary and compelling is the limitation. Hunter interpreted that statutory language and Bricker makes clear that extraordinary and compelling, those words are the principal limitation we're dealing with. I would point out that after the reply brief in this case, this court in a published decision in December called Williams, Judge Boggs, you were on the panel for that case. That was a case where the court applied the policy statement. It was a medical circumstances case, but the court in discussing the policy statement cited Hunter and its rule as good law there. I know your time's running out. Just to clarify, in the Ninth Circuit case in Bryant, they went off on, as I recall, what would essentially be your second argument, that they don't have a Hunter analog. Is that correct? That's right. It was a pure interpretation of the policy statement. Mr. Hall's position, I don't think it has any limits on the Sentencing Commission's ability to describe extraordinary and compelling reasons other than if it independently violates some other statute. It effectively drains the words extraordinary and compelling, which this court has said they have a meaning. McCall goes on about that extensively. It drains them of all content. Then the very last thing I want to finish on is, as the court has discussed several times, this is a case where the fact that issue his youth, this was not something that was floating around and not actually considered it as original sentencing. The district court made clear it was a principal reason for the 10-year downward variance the district court imposed at the reconsider. That same fact completely undermines finality. Okay. Thank you. Thank you. Thank you both for your arguments. The case will be submitted.